DOWNEY BRAND LLP
STEPHEN J. MEYER (BAR NO. 75326)
JOHN C. MCCARRON (BAR NO. 225217)
BRADLEY C. CARROLL (BAR NO. 300658)
621 Capitol Mall, 18th Floor
Sacramento, CA  95814-4731
Telephone:    (916) 444-1000
Facsimile:     (916) 444-2100
smeyer@downeybrand.com
jmccarron@downeybrand.com
bcarroll@downeybrand.com

DOWLING AARON INCORPORATED
STEVEN D. McGEE (BAR NO. 71886)
JARED C. MARSHALL (BAR NO. 272065)
8080 North Palm Avenue, Third Floor
Fresno, CA  93711
Telephone:  (559) 432-4500
Facsimile:  (559) 432-4590
smcgee@dowlingaaron.com
jmarshall@dowlingaaron.com

Attorneys for Plaintiff True Organic Products, Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| TRUE ORGANIC PRODUCTS, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ORGANIC FERTILIZERS, INC., a California corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR: (1) FALSE ADVERTISING, LANHAM ACT § 43(a), 15 U.S.C. § 1125(a); (2) UNFAIR COMPETITION, CAL. BUS. & PROF. CODE §§ 17200** *ET SEQ.***; AND (3) FALSE ADVERTISING, CAL. BUS. & PROF. CODE §§ 17500,** *ET SEQ.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff TRUE ORGANIC PRODUCTS, INC. ("TRUE" or "PLAINTIFF"), by and through its counsel, files this Complaint against CALIFORNIA ORGANIC FERTILIZERS, INC. ("COFI" or "DEFENDANT"), alleging as follows:

1523067.8

1

COMPLAINT

## JURISDICTION AND VENUE

1. In this action PLAINTIFF asserts claims against DEFENDANT for false advertising under section 43(a) of the Lanham Act ( 15 U.S.C. § 1125(a)), unfair competition under California Business and Professions Code section 17200 *et seq.*, and false advertising under California Business and Professions Code section 17500 *et seq.*  PLAINTIFF seeks injunctive relief, monetary damages, and other appropriate remedies based on proof at trial.

2. This Court has subject matter jurisdiction over the claims asserted in this Complaint pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 15 U.S.C. § 1121 as an action arising under the Lanham Act.  This Court has subject matter jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction), as well as pursuant to 28 U.S.C. § 1338(b), as an action asserting a claim of unfair competition joined with a substantial and related claim under the Lanham Act.

3. This Court has personal jurisdiction over DEFENDANT because DEFENDANT is incorporated in and maintains its principal place of business within the State of California.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)-(c) because DEFENDANT resides in this District and a substantial part of the events giving rise to PLAINTIFF'S claims occurred in this District.

## PRELIMINARY STATEMENT

5. Organic farming is a large and growing segment of California's vast agricultural industry.  There are currently over 2,700 farms in California that dedicate over a million acres to organic production.  California accounts for 21 percent of total certified organic land in the United States.  In 2016, total sales of organic commodities in the United States was $7.6 billion, nearly $3 billion of which occurred in California.

6. Consumers pay a premium for organic products and the growing demand for organic products depends upon the integrity of organic production.  Consumers must have confidence that organic products are in fact grown organically.

7. The growth in organic farming has created a growing demand for organic fertilizer.  For most crops and soil conditions, the use of organic fertilizers is a key part of any

1  organic farming plan. All agricultural fertilizers, including organic fertilizers, must provide one
2  or more of three primary plant nutrients: nitrogen (N), phosphorus (P), and potassium (K).

3        8.     California Code of Regulations, Title 3, section 2303 establishes the labeling
4  requirements for fertilizers. Section 2303(i) requires that fertilizer labels include a "guaranteed
5  analysis," stating the percentages of N, P, and K in the product. The Nitrogen component must be
6  broken down into ammoniacal nitrogen and nitrate nitrogen. Sections 2303(j) and (k) require a
7  statement of derivation and a list of ingredients. The derivation statement identifies "the sources
8  of all guaranteed primary nutrients or secondary nutrients, or both, and micronutrients. (Food &
9  Ag Code §14527) Accurate information on agricultural fertilizer labels is crucial to growers so
10 that they know exactly what they are applying to their crops. In the case of organic fertilizers,
11 this is even more important because inaccurate information about the content of an organic
12 fertilizer could cause a grower to inaccurately report their organic inputs to their organic certifier
13 and thus jeopardize the organic certification of the grower if that fertilizer is later found not to
14 qualify for use in organic production.

15       9.     TRUE and COFI both produce a variety of organic fertilizers and compete for
16 business in the organic fertilizer market. Both TRUE and COFI offer organic fertilizer products
17 that are made from seabird guano, which can be an effective organic fertilizer input, though most
18 sources of seabird guano are from aged deposits and are low in nitrogen content.

19       10.    Publicly available import data shows that since at least 2010, COFI has been
20 importing seabird guano products from multiple companies in Chile. One of the businesses from
21 which COFI imports products is a company called Guano Rojo Punta Gruesa in Iquique, Chile.
22 Publicly available import data shows that COFI has been importing "nitrogenated" red guano
23 products from Chile since at least 2011. In 2018, COFI has imported a significant amount of a
24 product that is referred to as "Nitrogenated Red Guano Fossilized Sea Bird Organic Fertilizer."
25 On its website, Guano Rojo advertises three products: Red Guano (0.5 – 1.5% nitrogen), Guano
26 Rojo Premium (4 – 8% nitrogen), and Guano Rojo Nitrogenado (4 – 8 % nitrogen). The
27 Nitrogenated Red Guano that COFI purchased from Guano Rojo this year appears to be mixed
28 with some other substance (likely sodium nitrate) to increase the nitrogen content of the product.

11. COFI uses the Nitrogenated Red Guano that it imports to produce a clear liquid fertilizer product called Phytamin Clear. This clear liquid product is desired by growers, in part, because growers can easily apply it through their irrigation systems. Even more appealing to growers is the high nitrate nitrogen content in Phytamin Clear, which is readily available to crops and thus generates quick plant response. The label of Phytamin Clear – as well as other marketing and advertising materials distributed by COFI on its website, which are considered part of the product labeling – state that Phytamin Clear is "Derived from mined seabird guano." The fact that the purported seabird guano that COFI purchases is "nitrogenated" indicates that the guano, and consequently the Phytamin Clear that COFI makes with that product, is not solely seabird guano. TRUE has conducted tests on samples of Phytamin Clear that confirm that Phytamin Clear is not derived solely from mined seabird guano.

12. The product that is likely used to "nitrogenate" the red guano and Phytamin Clear is sodium nitrate, also known as Chilean nitrate. Sodium nitrate is mined in the same area of Chile as the company from whom COFI purchases its "Nitrogenated Red Guano" is located. Subject to some restrictions, sodium nitrate is an approved organic fertilizer for products sold in the United States, but it is not an approved organic fertilizer for agricultural products sold in Canada. Canada is one of the largest importers of organic products produced in the United States, and it is likely that some of COFI'S customers export organic products to Canada. COFI'S customers would therefore be interested in knowing if Phytamin Clear is made in part or in whole from sodium nitrate rather than seabird guano.

13. California Food and Agricultural Code ("FAC") section 14681 provides that: "No person shall distribute misbranded fertilizing materials. A fertilizing material shall be deemed to be misbranded under any of the following conditions: (a) if its labeling is false or misleading in any particular way...." By falsely advertising that Phytamin Clear is a product that is exclusively derived from mined seabird guano, COFI is selling a misbranded product in violation of FAC section 14681.

14. By misrepresenting the nature, characteristics, and content of its Phytamin Clear fertilizer, COFI is engaging in false advertising under the Lanham Act and is engaging in unfair

competition and false advertising under California's Business and Professions Code. As a direct competitor of COFI, TRUE has suffered and is continuing to suffer irreparable harm as a result of COFI'S false advertising. Thus, TRUE is entitled to and seeks an injunction prohibiting the sale of COFI'S misbranded Phytamin Clear product.

## PARTIES

15. PLAINTIFF is a corporation organized under the laws of the State of California, with its principal place of business located at 99 Pacific Street, Suite 155A, Monterey, California 93940. PLAINTIFF is in the business of producing a diverse and innovative array of organic fertilizers.

16. On information and belief, DEFENDANT is a corporation organized under the laws of the State of California, with its principal place of business located at 10585 Industry Avenue, Hanford, California 93230. DEFENDANT is also in the business of producing organic fertilizers.

17. PLAINTIFF and DEFENDANT are competitors in the business of producing, marketing, and selling organic fertilizers.

18. PLAINTIFF does not know the true names and capacities of DEFENDANTS DOES 1 through 10, inclusive, and has, therefore, sued them under said fictitious names. When their true names and capacities are ascertained, PLAINTIFF will seek to amend this Complaint to allege their true names and capacities in lieu of the fictitious names.

19. PLAINTIFF is informed and believe that all defendants are, and at all times mentioned herein were, the alter egos, parents, subsidiaries, agents, partners, associates, joint-venturers, servants, employees, and/or authorized representatives of each other, and in doing the things herein, were acting within the course and scope of their authority, agency, and employment, and with the knowledge, consent, and approval of the other defendants.

## GENERAL ALLEGATIONS

20. COFI began marketing Phytamin Clear in or around 2010. According to materials downloaded from COFI's website, all Phytamin liquid fertilizer products sold by COFI "are compliant with GAP, EU, Canada, and NOP organic laws and regulations." With regard to

Phytamin Clear, its label specifically states that it is "Derived from mined seabird guano." The label lists no other ingredients. Likewise, the Material Safety Data Sheet for Phytamin Clear distributed by COFI identifies the chemical name of Phytamin Clear as "Fossilized Seabird Guano Extract Solution" and lists the composition/ingredients of Phytamin Clear as "Fossilized Seabird Guano."

21.  Relevant portions of Phytamin Clear's label and MSDS sheet are reproduced below. The portion of Phytamin Clear's label below is from the product guide available on COFI'S website. This copy of the label contains a "SAMPLE" watermark, but is otherwise identical to the labels on Phytamin Clear that are offered for commercial sale. The label and MSDS sheet for Phytamin Clear are attached hereto as Exhibits A and B, respectively



*Phytamin Clear Label*

***Phytamin Clear MSDS Sheet***

**California Organic Fertilizers, Inc.**
**SAFETY DATA SHEET – PHYTAMIN CLEAR**

Section 1. Identification

Product Identifier: Phytamin Clear
Chemical Name: Fossilized Seabird Guano Extract Solution
Recommended Use: Fertilizer

Manufacturer Name:   California Organic Fertilizers, Inc.
                     10585 Industry Ave.
                     Hanford, CA 93230
Telephone Number:    (559) 585-4705

Date of Preparation: October 3, 2016

Section 2. Hazard(s) Identification

Classification:
Physical – Not Hazardous
Health – Not Hazardous
Environment – Not Hazardous

Labeling: N/A
Hazard Statements: N/A
Precautionary Satements(s):   Follow instructions before use.

Section 3. Composition / Information on Ingredients

| Chemical Name | CAS No. | Concentration |
|---|---|---|
| Fossilized Seabird Guano | N/A | N/A |

22. TRUE became aware of COFI'S Phytamin Clear product in or around 2012. At the time, TRUE questioned whether Phytamin Clear was made exclusively of seabird guano as reflected on the Phytamin Clear label. Based on TRUE's experience with seabird guano products, the nitrate nitrogen content of Phytamin Clear did not appear to be consistent with seabird guano based products. The nitrate nitrogen content of Phytamin Clear instead appeared to TRUE to be more consistent with mined sodium nitrate.

23. Phytamin Clear is approved as an organic fertilizer by the California Department of Food and Agriculture ("CDFA"), the state agency responsible for regulating and registering organic fertilizers. In late 2013, TRUE informally raised its concerns about Phytamin Clear with CDFA but TRUE has seen no changes on the Phytamin Clear label. TRUE eventually concluded that the only way to confirm whether Phytamin Clear is actually derived from mined seabird

guano, as the label of the product claims, is to acquire and test samples of Phytamin Clear.

24. From October 2017 to April 2018, TRUE acquired five sealed containers of Phytamin Clear from organic growers who purchased the containers through companies that market and sell COFI's products. TRUE purchased the containers over an extended period of time so that the containers would come from different lots. Sales documents show that the containers come from at least four separate lots of Phytamin Clear. During that same time frame, TRUE acquired other products and raw materials to comparison test against Phytamin Clear. Among other things, TRUE acquired the following products: Sigma Aldrich Chile Saltpeter (the accepted reference sample for Chilean sodium nitrate), Man Agricola Norterra Red Guano (fossilized seabird guano), Peruvian seabird guano, and several fertilizer products sold by SQM North America Corporation and derived from Chilean sodium nitrate and potassium sulfate.

25. Under the supervision of Dellavalle Laboratory, samples of all of these products, including Phytamin Clear were taken and Dellavalle sent the samples to various qualified labs for testing. The samples were tested to determine the elemental make-up of the various samples. The results conclusively demonstrate that Phytamin Clear is not derived solely, if at all, from mined seabird guano.

26. Tests on all five Phytamin Clear samples showed that they all contain high levels of perchlorate. According to a Fact Sheet released by the United State Environmental Protection Agency in January of 2014, perchlorate is a persistent contaminant that can be harmful to humans. The maximum contaminant level of perchlorate allowed in California's public water systems is 6 parts per billion. The perchlorate levels found in the five Phytamin Clear samples ranged from 30 to 170 parts per *million*. Perchlorate can accumulate in ground water and in some crops. *Perchlorate is not present in mined seabird guano.* However, perchlorate is found in nitrate salts (sodium nitrate) from Chile.

27. The Phytamin Clear label states that it contains 4% nitrogen, 3% of which is nitrate nitrogen and 1% of which is ammoniacal nitrogen. Tests on the five Phytamin Clear samples reveal that 100% of the nitrogen in Phytamin Clear is nitrate nitrogen. *Seabird guano does not contain nitrate nitrogen.* However, nitrate nitrogen is the form of nitrogen found in

1523067.8                                    8
COMPLAINT

sodium nitrate.

28. Tests on all five Phytamin Clear samples showed that they all contain very minimal amounts of phosphorus. *Seabird guano contains significant amounts of phosphorus and is typically sold for its phosphorus content*. However, sodium nitrate contains very minimal amounts of phosphorus.

29. Tests on all five Phytamin Clear samples showed that they all contain about five times as much sodium as is generally found in seabird guano. The sodium levels in Phytamin Clear are consistent with sodium levels in sodium nitrate.

30. Tests on all five Phytamin Clear samples also confirm that the carbon levels in Phytamin Clear are not consistent with Phytamin Clear being derived solely from mined seabird guano.

31. The tests performed on Phytamin Clear confirm that Phytamin Clear is not derived solely from mined seabird guano. It appears likely that Phytamin Clear is instead derived at least partly, if not entirely, from sodium nitrate, a product that is banned from use on organic products sold into Canada and a product that can contain high levels of perchlorate. Based on the actual chemical composition of Phytamin Clear, as reflected in tests obtained by TRUE, it is possible that Phytamin Clear may not even qualify for use as an organic fertilizer in the United States.

32. The results of the testing are generally summarized in the table below. The chemical composition test results obtained by TRUE establish that Phytamin Clear cannot be "derived from mined seabird guano," as its label proclaims.

33. The most pertinent results of the testing are summarized as follows below:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

|  | Fossilized Seabird Guano | Peruvian Seabird Guano | Chilean Sodium Nitrate | Phytamin Clear (Average) |
|---|---|---|---|---|
| Sodium (ppm) | 20,116.30 | 19,400.00 | 275,849.00 | 107,214.65 |
| Phosphorus (ppm) | 96,998.80 | 65,106.80 | 17.35 | 49.36 |
| Available Phosphoric Acid (Percentage) | 12.94% | 13.18% | 0.00% | 0.008% |
| Perchlorate (ppm) | 0.41 | 0.02 | 94.0 | 85.8 |
| Nitrate Nitrogen (Percentage) | 0.17% | 0.18% | 16.50% | 3.67% |

34. The Phytamin Clear label and other advertising used by COFI for Phytamin Clear are false and misleading as to its contents and characteristics. These false and misleading label claims will necessarily deceive or have the tendency to deceive a substantial segment of organic fertilizer purchasers. The organic fertilizer purchasing decisions of the organic farming industry are plainly dependent on the representations made by the organic fertilizer manufacturer. When a consumer buys fertilizer they need to know if it contains contaminants (such as perchlorate), or if it contains substances that are not allowed to be used on organic products sold in international markets like Canada. The Phytamin Clear label and COFI's advertising dangerously deceives consumers who use the product on their organic crops because Phytamin Clear is not derived solely from mined seabird guano, contains potentially dangerous amounts of perchlorate, and is likely derived from sodium nitrate, a product that is not allowed for use on organic products sold into Canada.

## FIRST CLAIM FOR RELIEF

### False Advertising – Lanham Act § 43(a), 15 U.S.C. § 1125(a)

### (Against All Defendants)

35. PLAINTIFF specifically re-alleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 34, inclusive.

36. DEFENDANT falsely claims that Phytamin Clear is "Derived from mined seabird guano" on the label of its Phytamin Clear "organic" fertilizer product. This statement is purely of a factual nature, and not opinion or puffery. Moreover, the statement is literally false. The chemical composition of Phytamin Clear is inconsistent with a product that is derived solely from mined seabird guano.

37. DEFENDANT'S statement on the Phytamin Clear product label constitutes "commercial speech." DEFENDANT is in commercial competition with PLAINTIFF. DEFENDANT made the statement that Phytamin Clear contains mined seabird guano for the purpose of influencing consumers to buy Phytamin Clear, and DEFENDANT'S statement on the Phytamin Clear product label that it is derived from mined seabird guano was disseminated sufficiently to purchasers of organic fertilizer products to constitute advertising or promotion within the organic farming industry. DEFENDANT is therefore making this false statement on the Phytamin Clear product label in a commercial advertisement or promotion.

38. Because DEFENDANT'S statement that Phytamin Clear is derived from mined seabird guano is false and misleading, the statement necessarily actually deceived or had the tendency to deceive a substantial segment of organic fertilizer purchasers.

39. In addition, DEFENDANT'S statement that Phytamin Clear is derived from mined seabird guano is material to any purchaser of organic fertilizer. It is possible that once the actual ingredients in Phytamin Clear are fully disclosed, the product may not qualify as an organic fertilizer. Organic growers are legally prohibited from using products that are not specifically allowed for organic crop production on their soil and crops. Organic farmers also make organic fertilizer purchasing decisions based on the laws of the countries where they sell their products. Seabird guano is a legal fertilizer input in Canada, but sodium nitrate (which appears to be what Phytamin Clear is made from) is not a legal fertilizer input Canada. Given that Canada is one of the largest importers of organic products produced in the United States, it is reasonable to believe that at least some of COFI's customers would be interested in knowing if Phytamin Clear contains sodium nitrate. Similarly, seabird guano is not known to contain significant levels of perchlorate whereas sodium nitrate is known to contain high levels of perchlorate. The

application of a product containing significant levels of perchlorate could result in the contamination of the groundwater or even the crops. The purchasing decisions of organic growers are influenced by product labels that represent the source from which an "organic" fertilizer is made.

40. DEFENDANT made its false statement regarding the presence of mined seabird guano in the Phytamin Clear product in interstate commerce. DEFENDANT advertises its products, including Phytamin Clear, in multiple states through its online presence. Moreover, on information and belief, DEFENDANT solicits orders and sells Phytamin Clear across multiple state lines.

41. DEFENDANT'S false statement is likely to cause a direct diversion of sales from PLAINTIFF to DEFENDANT or a lessening of the goodwill which PLAINTIFF'S products enjoy with the buying public, thus causing damage to PLAINTIFF.

42. PLAINTIFF has suffered and is suffering irreparable harm as a result of DEFENDANT'S false advertising. PLAINTIFF is thus entitled to preliminary and permanent injunctive relief barring DEFENDANT from selling Phytamin Clear, pursuant to 15 U.S.C. § 1116(a).

## SECOND CLAIM FOR RELIEF

**Unfair Competition – California Business and Professions Code §§ 17200 *et seq.***

**(Against All Defendants)**

43. PLAINTIFF specifically re-alleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 42, inclusive.

44. By making the false and misleading statement on its label that Phytamin Clear is derived from mined seabird guano, DEFENDANT violated Title 3 CCR section 2303(k) and FAC sections 14652(b) and 14681(a). In making these false and misleading label claims in violation of California law, DEFENDANT also committed acts of unfair competition, as defined by California Business and Professions Code section 17200.

45. As a result of the aforementioned acts described herein, PLAINTIFF has lost money or property and suffered injury in fact. As a competitor of PLAINTIFF in the business of

1 manufacturing, distributing, and selling liquid organic fertilizers, the direct and necessary result of DEFENDANT'S unlawful and fraudulent business practices is to deprive PLAINTIFF of sales of organic fertilizer products that it otherwise would have received.

46. As a result of DEFENDANT'S unlawful and fraudulent business practices and acts of false and misleading advertising described herein, PLAINTIFF has suffered and is suffering irreparable harm. PLAINTIFF is thus entitled to preliminary and permanent injunctive relief barring DEFENDANT from selling Phytamin Clear, pursuant to California Business and Professions Code section 17203.

### THIRD CLAIM FOR RELIEF

**False Advertising – California Business and Professions Code §§ 17500 *et seq.***

**(Against All Defendants)**

47. PLAINTIFF specifically re-alleges and incorporates herein by reference, as though set forth in full, paragraphs 1 through 46, inclusive.

48. By making the false and misleading statement on the label of Phytamin Clear that Phytamin Clear is derived from seabird guano, DEFENDANT has committed acts of false and misleading advertising, as defined by California Business and Professions Code section 17500.

49. Because this representation is literally false, PLAINTIFF'S representations necessarily have the likelihood or tendency to deceive or confuse the public.

50. As a result of the aforementioned acts described herein, PLAINTIFF has lost money or property and suffered injury in fact. As a competitor of PLAINTIFF in the business of manufacturing, distributing, and selling liquid organic fertilizers, the direct and necessary result of DEFENDANT'S false advertising is to deprive PLAINTIFF of sales of organic fertilizer products that it otherwise would have received.

51. As a result of DEFENDANT'S false advertising described herein, PLAINTIFF has suffered and is suffering irreparable harm. PLAINTIFF is thus entitled to preliminary and permanent injunctive relief barring DEFENDANT from selling Phytamin Clear, pursuant to California Business and Professions Code section 17535.

///

**Prayer for Relief**

WHEREFORE, PLAINTIFF prays for judgment in its favor awarding:

1. Damages in an amount according to proof at trial;

2. Temporary and permanent injunctive relief barring DEFENDANT from selling its mislabeled Phytamin Clear product;

3. Attorneys' fees and costs as allowed by law; and

4. Any other relief this Court deems just and proper.

DATED: September 17, 2018          DOWNEY BRAND LLP


                                   By:    /s/ John C. McCarron
                                        STEPHEN J. MEYER
                                        JOHN C. MCCARRON
                                        BRADLEY C. CARROLL
                                        Attorney for Plaintiff